In Re BULK POPCORN ANTITRUST LITIGATION.

All Cases.

No. Civ. 3–89–710.

United States District Court, D. Minnesota, Third Division.

Nov. 27, 1991.

Samuel D. Heins, W. Joseph Bruckner, Opperman, Heins & Paquin, Minneapolis, Minn., for all plaintiffs.

Warren Rubin, Gross, Sklar & Metzger, Philadelphia, Pa., Guido Saveri, San Francisco, Cal., Gary L. Specks, Altheimer & Gray, Chicago, Ill., Jerry B. Chariton, Larry S. Keiser, Chariton & Keiser, Wilkes–Barre, Pa., for Arzente Family Corp. and Chocolate Popcorn Co., plaintiffs.

Kenton C. Granger, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., for Zarda Brothers Dairy, Inc., plaintiff.

Donald R. Johnston, Briggs & Morgan, Minneapolis, Minn., Michael D. Hausfeld, Ann C. Yahner, Cohen, Milstein & Hausfeld, Washington, D.C., Ann M. Spencer, Wagner, Johnston & Falconer, Minneapolis, Minn., for Michael J. Iannacone, Bankruptcy Trustee for Hancock–Nelson Mercantile Co., on behalf of bankruptcy Estate of Hancock–Nelson Mercantile Co. Inc., and a class of all others similarly situated, plaintiff.

Jack L. Chestnut, Karl L. Cambronne, Chestnut & Brooks, Minneapolis, Minn., for Old Dutch Foods, Inc., plaintiff.

Charles H. Johnson, Johnson Law Office, St. Paul, Minn., for Michael McPherson, plaintiff.

John A. Cochrane, Cochrane & Bresnahan, St. Paul, Minn., Howard I. Langer, Berger & Montague, Philadelphia, Pa., J. Garrett Kendrick, Long Beach, Cal., Lawrence G. Papale, Cannata & Papale, Francis O. Scarpulla, Scarpulla & Scarpulla, San Francisco, Cal., for Syufy Enterprises, plaintiff.

John A. Cochrane, Cochrane & Bresnahan, Mark Reinhardt, St. Paul, Minn., for Ogren Popcorn, Inc. and Preferred Food Concepts, Inc., plaintiffs.

Alan H. Maclin, James J. Long, Donald R. Johnston, Briggs & Morgan, St. Paul, Minn., for Ellis Popcorn Co., defendant.

Robert DeMay, Allen Saeks, Leonard, Street & Deinard, Randall Smith, Jacobson, Stromme & Harwood, Minneapolis, Minn., James H. Hamm, III, Robert D. Moreland, Thomas M. Shoaff, Baker, Daniels & Shoaff, Fort Wayne, Ind., for Weaver Popcorn Co., defendant.

G. Marc Whitehead, Bruce H. Little, Popham, Haik, Schnobrich & Kaufman, Minneapolis, Minn., Theodore R. Tetzlaff, Richard P. Steinken, Nina Vinik, Jenner & Block, Chicago, Ill., for Popcorn Institute, defendant.

Robert J. Hennessey, Larkin, Hoffman, Daly & Lindgren, Minneapolis, Minn., Merrill S. Schell, M. Stephen Pitt, Debra D. Poulin, Wyatt, Tarrant & Combs, Louisville, Ky., for Gettelfinger Popcorn, defendant.

Eugene M. Warlich, Alan I. Silver, Marc J. Manderscheid, Gary M. Hansen, Doherty, Rumble & Butler, St. Paul, Minn., for Wyandot Corp., defendant.

Anne V. Simonett, Norman R. Carpenter, Faegre & Benson, Minneapolis, Minn., for Curtice Burns Foods, defendant.

Robert R. Weinstine, Steven C. Tourek, Gina M. Follen, Darron C. Knutson, Winthrop & Weinstine, St. Paul, Minn., Brooks F. Poley, Zelle & Larson, Minneapolis, Minn., for Golden Valley Microwave Foods, Inc. and Vogel Popcorn Co., defendants.

Timothy E. Carr, Carr & Mussman, San Francisco, Cal., for George Brown, defendant.

## MEMORANDUM AND ORDER

MAGNUSON, District Judge.

### I. Introduction

This matter is before the court upon defendants' Golden Valley Microwave Foods (Golden Valley) and Weaver Popcorn (Weaver) motions for summary judgment. On August 9, 1989, plaintiff Iannacone filed a class action complaint against defendants for federal antitrust claims. Thereafter, four additional complaints by direct purchasers and two indirect purchasers followed.

Plaintiffs allege that defendants engaged in a nationwide conspiracy to fix prices for bulk popcorn during the period January 1, 1979 through December 31, 1988, and participated in other anti-competitive conduct in violation of Section One of the Sherman Act, 15 U.S.C. § 1. Plaintiffs point to George Brown, defendant Wyandot's president and board chairman, as the conspiracy's "kingpin". Brown allegedly communicated with each of the defendants and subsequently reported price and other information back to the individual defendants. Plaintiffs claim Golden Valley and Weaver were players in this conspiracy. Golden Valley and Weaver now move the court for summary judgment to all claims. Additional facts will be incorporated as they are relevant. The court will address each defendant's motion separately.

### II. Weaver Popcorn's Motion for Summary Judgment

■ Plaintiffs allege that Weaver Popcorn acted in concert with several others to fix prices for bulk popcorn. Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (1991). On a motion for summary judgment, the nonmoving parties are entitled to the benefit of all favorable inferences, and all genuine issues of material fact must be reserved for resolution by the jury. *In re Workers' Compensation Insurance Antitrust Litigation* 867 F.2d 1552, 1560 (8th Cir.), *cert. denied,* 492 U.S. 920, 109 S.Ct. 3247, 106 L.Ed.2d 593 (1989), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986), and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Plaintiffs have indicated the following as evidence in support of Weaver's unlawful behavior.

First, Weaver employees have, on various occasions, discussed popcorn prices with competitors. For example, Mike Weaver of Weaver Popcorn indicated that he had "probably" three conversations with Mr. Brown (of Wyandot) in which the issue of bulk popcorn prices was raised. One such conversation was documented by Mike Weaver. In August of 1991, Mike Weaver had a telephone conference with George Brown, during which the two discussed Weaver's sales terms to a particular customer. Mike Weaver documented this conversation in a memorandum dated August 31, 1981 to his father, Welcome Weaver. This memorandum was also sent to Weaver's "Competition File" and the "Wyandotte [sic] File".

Second, plaintiffs point to a Wyandot price list found in the Weaver files with a cover note stating "FOR YOUR INFORMATION, George K. Brown" as evidence of a conspiracy. The note was date stamped August 15, 1980, yet the price list states the effective date of Wyandot's new prices is not until three days later, August 18, 1980. Mike Weaver testified that he "might have" received the price list and note directly from George Brown.

Third, plaintiffs point to a conversation between George Brown and Vogel Popcorn president Art Vogel in which the two discussed that Mr. Weaver, in part, was attempting to prevent public dissemination of information relating to the available supply of bulk popcorn. Apparently, if customers became aware that the popcorn crop was plentiful then the customers would not to-

lerate higher prices. George Brown's memorandum indicates that Art Vogel mentioned that Mike Weaver claimed that the popcorn institute committee did not release the statistical report with respect to popcorn supply because "some people felt the acreage was too high and it would be detrimental."

Fourth, plaintiffs indicate that Mr. Weaver received a copy of a letter written by Brown to a third party popcorn supplier (National Oats) urging National Oats to join the Popcorn Institute and not make public statements that the popcorn supply was strong this year. The copy of the letter was sent to Weaver by William Smith, executive director of The Popcorn Institute who noted that he was sending the letter that he and Mr. Weaver had "discussed on the phone." Weaver testified that during this telephone conversation with Mr. Smith, both he and Mr. Smith acknowledged that the letter was "inappropriate" and "it's not the kind of thing that ... a member of the [Popcorn] Institute should be talking about."

Fifth, plaintiffs refer to several discussions between Mr. Brown and Mr. Richard Lintner, (Weaver employee who assists in Weaver pricing) in which both sales volume and prices were discussed. Lintner admitted that he had "four or five" other conversations with George Brown and that it was possible that in those conversations, Brown raised the subject of prices, markets or the competitive situation in the bulk popcorn industry.

Sixth, plaintiffs assert that Weaver agreed to not compete in bulk sales in areas west of the Mississippi River. Mr. Tyk testified that Mr. Kennebeck informed him that Vogel had an agreement with other processors, including Weaver, that Vogel would not compete in areas east of the Mississippi River and that Weaver would not compete in the West.

■ Plaintiffs have presented sufficient evidence of a conspiracy to avoid summary judgments. Once a conspiracy is established, even *slight evidence* connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement.

*United States v. Garcia*, 785 F.2d 214, 225 (8th Cir.), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). Once a conspiracy is shown, only slight evidence is needed to link another defendant with it. *Accord Apex Oil Co. v. Di Mauro*, 822 F.2d 246, 257 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). Plaintiffs have presented more than slight evidence that Weaver may have been a player in a conspiracy to fix popcorn prices. Accordingly, there exist triable issues of fact that Weaver engaged in unlawful behavior.

■ Defendant Weaver relies on *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), to suggest that plaintiffs here have a greater burden to resist a summary judgment motion because Weaver claims it has engaged in non anti-competitive behavior. However, this reliance is misplaced. While it is true the plaintiffs in *Matsushita* faced such a greater burden, it is only because a unique situation existed. In *Matsushita*, the plaintiffs' claims centered on alleged price-cutting, rather than setting prices artificially high. The defendants in *Matsushita* were accused of illegally engaging in a scheme to maintain artificially high prices for television sets sold in Japan and, at the same time, to fix and maintain low prices for the sets sold in the United States. The Supreme Court characterized such predatory pricing conspiracy as "speculative" by nature. *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356–57. The Supreme Court therefore required a greater burden on plaintiffs that defendants have engaged in illegal behavior. The court reasoned that:

> If the factual context renders respondents' claim implausible—if the claim is one that simply makes no economic sense—respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.

*Matsushita* at 587, 106 S.Ct. at 1356.

Plaintiffs' antitrust claims in the case at hand do not concern price-cutting (non-anticompetitive action). Rather, the plaintiffs allege prices were maintained at an artifi-

cially high level. Holding prices at artificially elevated prices does, in fact, make good economic sense. Thus the *Matsushita* higher burden of proof is not applicable here. Weaver Popcorn's motion for summary judgment is therefore DENIED.

III. Golden Valley's Motion for Summary Judgment

■ From January 1, 1979 through December 31, 1988 Golden Valley did not sell bulk popcorn but rather purchased bulk popcorn for its microwave popcorn business. However, on October 14, 1987, Golden Valley purchased all outstanding shares of defendant Vogel Popcorn, a processor and seller of bulk popcorn. Plaintiffs essentially argue Golden Valley is liable for unlawful behavior in two respects. First, plaintiffs assert that Golden Valley, as the owner and controller of Vogel, is responsible for Vogel's unlawful behavior in the bulk popcorn industry. Second, plaintiffs assert Golden Valley is directly liable for its own unlawful behavior subsequent to the Vogel acquisition.

Plaintiffs claim that Golden Valley is liable for the illegal behavior of its subsidiary Vogel because of Golden Valley's "total control of Vogel." Plaintiffs present several items to support this claim. First, James Watkins, Golden Valley's CEO, admitted that upon the purchase of Vogel Popcorn, Golden Valley had "full operating control" of Vogel Popcorn. All Vogel employees reported to Golden Valley. In 1988, Robert Sander then Golden Valley's president and chief operating officer, also became Vogel Popcorn's president and chief operating officer. Vogel Popcorn "was turned over to him". Vogel Popcorn's pricing decisions were shifted to Golden Valley, as was the responsibility for expanding sales and customers. Patrick W. Tyk, a Golden Valley employee, was specifically assigned to oversee Vogel's operations and had primary responsibility for pricing after Golden Valley acquired Vogel. Thus, Golden Valley employees were involved in the day to day operations of its subsidiary Vogel Popcorn.

Other evidence supports plaintiffs' claim of control. For example, in its 1988 Annual Report to Stockholders, Golden Valley stated that "Golden Valley is a vertically integrated company" controlling the microwave popcorn process from the "seed in the ground to the popcorn in the bowl." Further, Vogel is not treated as a separate entity in Golden Valley's 1988 Annual Report. While it may be true that mere ownership of the stock of another company is insufficient to hold the acquiring corporation liable, plaintiff's evidence regarding Golden Valley's day to day control amounted to more than showing simple stock ownership.

In any event, even if it is not found that Golden Valley exercised complete control over Vogel to hold Golden Valley liable for Vogel's unlawful behavior, sufficient evidence exists that Golden Valley engaged directly or acquiesced in a pricing conspiracy. Golden Valley Chief Executive Officer failed to disclose knowledge of price fixing. In December 1988 Watkins received Tyk's memo stating,

"In June 1988, I attended my first Popcorn Institute meeting and was hit from several sides by industry members asking me to raise our bulk popcorn prices. After careful discussions with these people and others I discovered that Art Vogel had instructed people such as George Brown of Wyandot to talk to me about raising bulk prices in unison with other industry members ... I reported these events as well as my discovery that Art Vogel had an arrangement with Ellis Popcorn and Wyandot to raise popcorn prices in unison to both you and Dick Moen. You instructed me to tell Art Vogel that if anyone was going to go to prison for price fixing it would be you and that you would make the decision, not he."

According to Watkins' own testimony, Golden Valley president, Bob Sander, personally informed Watkins of the Tyk memo, yet no action was taken. Thus, plaintiffs have presented sufficient evidence of Golden Valley's involvement in the conspiracy.

Golden Valley, in support of its summary judgment motions, cites to *Matsushita* for the proposition that the "absence of any plausible motive to engage in the conduct

charged is highly relevant to whether a 'genuine issue for trial' exists ..." *Matsushita,* 475 U.S. at 596, 106 S.Ct. at 1361. Golden Valley asserts that because Golden Valley was a purchaser rather than a seller of bulk popcorn for nine of the ten years of the alleged conspiracy, it had no "motive" to engage in price fixing. While this argument may indeed be proper during the early years of the conspiracy, it fails after Golden Valley purchased all of Vogel's outstanding stock. Golden Valley, wholly owning Vogel Popcorn, stood to gain by the increased profits realized by artificially high prices.

"It is well recognized that a co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objective may, in the antitrust context, be charged with the preceding acts of its co-conspirators." *Havoco of America, Ltd. v. Shell Oil Co.,* 626 F.2d 549, 554 (7th Cir.1980). See also *United States v. Burchinal,* 657 F.2d 985, 990 (8th Cir.) *cert. denied,* 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981). Once a conspiracy is shown, only slight evidence is needed to link another defendant with it. *Accord Apex Oil Co. v. Di Mauro,* 822 F.2d 246, 257 (2d Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987). Plaintiffs have presented sufficient evidence that Golden Valley through its purchase of Vogel Popcorn and subsequent day to day control of Vogel has engaged in unlawful behavior. Accordingly, defendant Golden Valley Microwave Popcorn's motion for summary judgment is DENIED.

Thus, IT IS HEREBY ORDERED that:

1. Defendant Weaver Popcorn's motion for summary judgment is DENIED.

2. Defendant Golden Valley's motion for summary judgment is DENIED.