## In re SELECT COMFORT CORPORATION SECURITIES LITIGATION.

### No. CIV. 99–884 DSD/JMM.

United States District Court,
D. Minnesota.

Sept. 4, 2001.

Richard A. Lockridge, Esq., Karen M. Hanson, Esq. and Lockridge, Grindal & Nauen, Minneapolis, MN, Robert M. Kornreich, Esq., Michael A. Schwartz, Esq. and Wolf & Popper, Regina LaPolla, Esq., Benjamin Y. Kaufman, Esq., Milberg Weiss, Bershad, Hynes & Lerach, New York City, for plaintiffs.

Michael J. Bleck, Esq., Michael E. Keyes, Esq. Carey S. Meyer, Esq. Oppenheimer, Wolff & Donnelly, Minneapolis, MN, for defendants.

DOTY, District Judge.

This matter is before the court on plaintiffs' motion for class certification. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiffs' motion.

## BACKGROUND

This action arises out of allegations by the plaintiffs that defendants violated Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Plaintiffs allege that defendants made a series of false and misleading public statements that either misrepresented or omitted material information relevant to the value of common stock issued under the company's registration statement and prospectus dated December 4, 1998, and which was declared effective by the Securities Exchange Commission ("SEC") on December 3, 1998, and filed in connection with Select Comfort's initial public offering ("IPO").

In particular, plaintiffs allege that defendants failed to adequately and completely disclose the following information: (1) the dependence of Select Comfort's sales and revenue growth on the company's ability to provide its customers favorable credit terms that would not be available in an arms-length transaction; (2) that access to easy credit for Select Comfort's customers had been effectively eliminated by late November 1998; (3) that Select Comfort began experiencing a decline in sales and revenue as early as November 1998 due to the loss of its ability to provide its customers favorable credit terms; and (4) that access to credit for customers could not be obtained on the same, or as favorable, terms from an independent financing agent so there was no prospect for sales to increase or revenues to grow. (See Pls.' Mem. Supp. Class Cert. at 2.)

Plaintiffs allege that because none of these material facts were disclosed to investors, the

price of Select Comfort's common stock was artificially inflated during the class period and class members who purchased Select Comfort's common stock during that period did so at artificially inflated prices. (*Id.*) Plaintiffs further allege that the true status of Select Comfort's financial condition was not disclosed to the public until a June 8, 1999 press release. (*Id.*) After that announcement, Select Comfort's common stock plummeted 43 percent in a sell-off on trading volume of over 5.6 million shares.[1] (*Id.*)

Pursuant to Rule 23 of Federal Rules of Civil Procedure, plaintiffs move for class certification. Defendants oppose class certification on various grounds including typicality of the claims and adequacy of the proposed representatives, each of which is discussed fully below. Defendants also assert that plaintiffs are attempting to improperly certify one class for two distinct claims. Plaintiffs, however, respond that they are properly seeking certification of a class consisting of two subclasses comprised of: (1) an IPO subclass;[2] and (2) a 10b–5 subclass.[3] For the reasons stated the court conditionally certifies the following class of:

> All persons and entities, other than defendants and their heirs, successors and assigns and the members of the individual defendants' immediate families, who: (i) purchased Select Comfort stock issued under and/or traceable to the company's registration statement/prospectus dated December 4, 1998 which was declared effective by the SEC on December 3, 1998 and filed in connection with Select Comfort's IPO; or (ii) purchased Select Comfort common stock in the open market during the period December 4, 1998 through June 7, 1999, and who were damaged by defendants' violations of the federal securities laws.[4]

## DISCUSSION

Class certification is governed by Rule 23 of Federal Rules of Civil Procedure. That rule requires a two step analysis to determine whether a class is appropriate. First, plaintiffs must satisfy the four prerequisites in Fed.R.Civ.P. 23(a) by demonstrating that: (1) the class is so numerous that joinder of all members is impractical (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interest of the class (adequate representation). Second, the action must satisfy at least one of the three subdivisions of Rule 23(b).[5]

## A. Rule 23(a) Requirements

■ In order to satisfy the threshold requirements of Rule 23(a), the named plain-

---

1. Plaintiffs allege that this transaction was twenty-five times the three month average daily trading volume and the lowest close on the stock since the company went public in December 1998, representing a decline of approximately 75% in value from January 1999. (*Id.*)

2. Comprised of those asserting claims under § 11, § 12(a)(2) and § 15.

3. Comprised of those asserting claims under § 10(b) and § 20(a).

4. As will be discussed in greater detail below, the first subclass reflects the court's incorporation of amendments to plaintiffs' original class certification definition since it takes into account those in the IPO subclass who may have purchased stock on December 3, 1998, after the SEC declared the prospectus and registration dated December 4, 2001, effective. Initially plaintiffs sought a subclass(i)defined as a class comprised of those who had "purchased Select Comfort common stock issued under and/or traceable to the Company's Registration State-

ment/Prospectus dated December 4, 1998 filed in connection with Select Comfort's IPO." Based upon plaintiffs' argument during the hearing on June 14, 2001, and the extensive record before the court, the court has modified the requested class to conform with what it considers to be the applicable dates permissible without amending the underlying complaint. (*See* Pl. Dale Compl. ¶ 1.)

5. Rule 23(b) reads, in relevant part:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> . . .
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b).

tiffs must establish that the four above-mentioned criteria are met. The court exercises broad discretion in determining whether such criteria are satisfied. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979).

### 1. Numerosity

 Numerosity requires that the proposed class be so numerous that joinder is impractical. Fed.R.Civ.P. 23(a)(1). Courts have typically established no arbitrary or rigid rules regarding the required size of a class, and what constitutes impracticality depends upon the facts of each case. *See Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, 337 (D.Minn.1999). Factors relevant in assessing the impracticality of joining all class members include the number and geographical dispersion of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the impracticability of joining the class members. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir.1982). The parties do not dispute that the numerosity requirement is met in this matter. (*See* Def.'s Mem. Opp'n Class Cert. at 15.) Accordingly, the court concludes that the numerosity requirement is satisfied.

### 2. Commonality Requirement

 Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The Eighth Circuit has consistently held that the commonality requirement is satisfied when the legal question linking the class members is substantially related to the resolution of the litigation even though the individuals may not be identically situated. *See DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir.1995) (citing *Paxton*, 688 F.2d at 561). Factual variances among class grievances will not defeat the commonality requirement so long as the claims arise from a common nucleus of operative facts. *Id. See also Newberg on Class Actions* § 3.10 (3d ed.1992) (commonality will be found if the defendant has engaged in a "course of conduct that affects a group of persons and gives rise to a cause of action.").

 Defendants maintain that plaintiffs' proposed class fails to meet the commonality requirement because the Section 10(b) claims are separate and distinct from the Section 11 and Section 12(a)(2) claims. Defendants assert that since there are varying burdens of proof and pleading requirements for these differing claims,[6] the two cannot be joined together in one action.[7]

Plaintiffs counter that any problems arising from the differing burdens of proof or legal standards of the varying claims are resolved by the fact that they have moved for certification of a class comprised of two subclasses. (*See* Pls.' Reply Mem. at 2.) That is, since the proposed class here is made up of two distinct subclasses, any differences in the substantive variations of the legal claims asserted are fully taken into consideration.

The court agrees with plaintiffs that a single class consisting of two subclasses may be properly certified in this action. There is clearly a common nucleus of operative facts. The predominant focus of the defendants' alleged conduct centers upon a series of purportedly false and misleading statements directed to the investing public about defendants' financial performance, sales, revenues, accounts receivable and business prospects that impacted the price of defendants' common stock.[8] In sum, defendants' liability for

---

6. Specifically, the 10b–5 claims differ from the IPO claims in the necessity of proving scienter, reliance and damages. *See* 15 U.S.C. § 77k(a); 15 U.S.C. § 771(a)(2).

7. Defendants cite to *Reichert v. Bio–Medicus, Inc.*, 70 F.R.D. 71, 75–76 (D.Minn.1974), for the proposition that when common factual and legal issues do not predominate, class action status should be denied. The court however is not persuaded that *Reichert* is instructive here since it does not directly consider or take into account the use of subclasses.

8. For example, plaintiffs assert that the common questions include: (1) whether the federal securities ·laws were violated by defendants' alleged misconduct; (2) whether statements made by defendants to the investing public misrepresented or omitted material facts concerning defendants' market condition, growth prospects and sales results and forecasts; (3) whether defendants' statements during the class period omitted material facts concerning the company's customers' access to consumer credit necessary to make the company's statements concerning its sales

their alleged conduct that purportedly artificially inflated the price of their common stock is the essential focus of this litigation, and it predominates over any individual issues that may arise. *See In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D. 425, 431 (D.Ariz.1992) ("it would be folly to force each [investor] to prove the nucleus of the alleged fraud again and again.").

The court thus concludes that the certification of a class comprised of two subclasses is a proper and expedient way to deal with the differing legal standards of the claims asserted while also taking into account the common nucleus of operative facts. *See* Fed.R.Civ.P. 23(c)(4)(B) ("[w]hen appropriate ... a class may be divided into subclasses and each subclasses treated as a class."); *In re VMS Sec. Litig.*, 136 F.R.D. 466, 474 (N.D.Ill.1991) (permitting use of subclasses in securities litigation); *Manual For Complex Litigation (Third)* (1995) § 30.15 (discussing that the district court has discretion to certify a class comprised of subclasses). In other words, since the claims here arise from allegations of a common scheme of defendants' alleged misrepresentations regarding securities and any substantive disparities are fully accounted for by the aforementioned subclasses, the court believes that plaintiffs have satisfied the requirements of Fed.R.Civ.P. 23(a)(2).

### 3. Typicality

■ Rule 23(a)(3) requires that the claims of the representative parties be "typical" of those of the class members that they seek to represent. As the Eighth Circuit noted in *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir.1996) (citations omitted), typicality is met where there are "other members of the class who have the same or similar grievances as the plaintiff." A named plaintiff's claim is typical "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory." *Paxton*, 688 F.2d at 561. The bur-

den is "fairly easily met so long as other class members have claims similar to the named plaintiff." *Alpern*, 84 F.3d at 1540. "'So long as plaintiffs rely upon the same legal theory and their claims arise from the same course of conduct, the typicality requirement is satisfied.'" *In re Tricord Sys. Inc. Sec. Litig.*, No. 3–94–746, 1996 U.S. Dist. LEXIS 20943, at *24 (D. Minn. April 5, 1996) (quoting *In re Regal Communications Corp. Sec. Litig.*, [1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) P. 98,871 at 93,234, 1995 WL 550454 (E.D.Pa. Sept. 25, 1995)). *See Paxton*, 688 F.2d at 561–62 (holding that typicality is met when the claims of the named plaintiffs emanate from the same event or are based upon the same legal theory as the claims of the class members).

■ Moreover, typicality is closely related to commonality as "a finding of one generally compels a finding of the other." *See Buycks–Roberson v. Citibank Fed. Sav. Bank*, 162 F.R.D. 322, 333 n. 13 (N.D.Ill. 1995) (citing *Newberg* § 3.13). It is also well recognized that the district court has "broad authority to define or redefine the class until judgment is entered or to otherwise alter or amend any class certification order before the decision on the merits." *White v. Snider*, No. 93–3666, 1994 WL 105525, at *3 (E.D.Pa. March 30, 1994); *see also* Fed.R.Civ.P. 23(c)(1) (providing that an order certifying a class "may be altered or amended before the decision on the merits").

Defendants assert that the typicality requirement is not met in either subclass because two of the named plaintiffs are subject to unusual facts or unique defenses that may divert attention from class-wide issues or that may potentially prejudice the claims of absent class members. For the following reasons, the court is not persuaded by this assertion.

#### a. IPO Subclass

In their initial motion plaintiffs sought certification of an IPO subclass defined as:

not misleading in light of the circumstances under which they were made; (4) whether defendants acted with scienter in making such misstatements and omissions; (5) whether the price of defendants' common stock was artificially inflated during the class period due to defendants' misrepresentations and omissions; (6) whether

the prospectus and registration statement disseminated by defendants omitted or misrepresented material facts; (7) whether the individual defendants were control persons at the time of the IPO or during the class period; and (8) whether members of the class sustained any damages. (*See* Pls.' Mem. at 7.)

[A]ll persons and entities ... who: (i) purchased Select Comfort common stock issued under and/or traceable to the Company's Registration Statement/Prospectus dated December 4, 1998 filed in connection with Select Comfort's IPO; or (ii) purchased Select Comfort common stock in the open market during the period December 4, 1998 through June 7, 1999.

(Pls.' Mem. Supp. Class Cert. at 2–3.)

 The proposed class representative of the first subclass is Heidi Dale ("Dale") who purchased 100 shares of common stock in Select Comfort's IPO. Because Dale made her purchase on December 3, 1998, not on December 4, 1998, defendants assert that she is not a member of the IPO subclass she purports to represent and cannot serve as its class representative. *See Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) (providing that a named plaintiff must be a member of the class she purports to represent.) That is, defendants believe that, given her date of purchase, Dale cannot represent the proposed subclass since her claims are atypical of the other likely members of the proposed subclass.

Plaintiffs argue that contrary to defendants' assertions Dale is a member of the class that she purports to represent and can serve as the subclass representative. Plaintiffs contend that they initially chose the commencement date of December 4, 1998 for the proposed IPO subclass because the company's registration statement and prospectus were dated December 4, 1998. Furthermore, while the SEC declared the IPO effective at 4:30 p.m., eastern standard time ("EST"), on December 3, 1998, after the NASDAQ stock

market had closed for the day, plaintiffs initially and mistakenly believed that the first trades in Select Comfort stock could not have occurred until December 4, 1998. They further assert that it was not until June 1, 2001, when during discovery they received the declaration of Robert Neubeck, a Charles Schwab & Co. trading manager, that they learned that Dale had purchased the Select Comfort shares issued in the IPO earlier than the December 4, 1998 date on prospectus, *i.e.* after the registration statement and prospectus were declared effective on December 3, 1998. The plaintiffs therefore have asked this court, pursuant to Fed. R.Civ.P. 23, to amend the proposed definition of the first subclass to take into account this evidence and to specify that the effective dates of the period for subclass (i), in fact, began on December 3, 1998.[9]

Defendants counter that any request to amend the motion for class certification must be denied on three bases: (1) the class period cannot be enlarged without amending the underlying complaint; (2) previous court orders have already cut off the time for amending the pleadings or adding new parties; and (3) the one year statute of limitations has expired for bringing any claims of those who may have purchased on December 3, 1998. (*See* Defs.' Supplemental Mem. at 1.)

Plaintiffs assert that no amending of the complaint is required since they have properly alleged claims on behalf of all persons and entities who acquired Select Comfort common stock issued under the company's registration statement and prospectus *dated* December 4, 1998, and all persons and entities who acquired Select Comfort common stock in the open market during the period December 4, 1998 through June 7, 1999, traceable to the company's IPO.[10]

---

9. While it appears from the briefs that plaintiffs initially requested an amendment to *both* subclasses to date back to December 3, 1998, the court believes that only subclass (i) can be properly considered and amended since this subclass *reflects those in the IPO subclass who may have* purchased stock on December 3, 1998, after the SEC declared the prospectus and registration statement dated December 4, 2001, effective. (*See* Pls.' Reply Mem. at 4.)

10. Paragraph 1 of the complaint reads:
 This class action against Select Comfort Corporation ("Select Comfort" or the "Company")

and certain of its former officers and directors is prosecuted on behalf of Heidi Dale and a class consisting of all other persons and entities, other than defendants and their affiliates, assigns, and the members of the individual defendants' immediate families, who acquired Select Comfort common stock issued under the Company's Registration Statement and Prospectus ("Registration Statement/Prospectus") dated December 4, 1998, which was. declared effective by the Securities and Exchange Commission ("SEC") on December 3, 1998, and filed in connection with Select Comfort's initial public offering (the "IPO"), during the period

In sum, plaintiffs argue that a plain reading of paragraph 1 of the Dale complaint makes it clear that this complaint seeks to represent all persons and entities who acquired Select Comfort common stock in the IPO which commenced when the SEC declared the registration statement and prospectus effective on December 3, 1998 at 4:30 p.m. (EST). Moreover, plaintiffs assert that since this subclass has not yet been certified, and considering that a district court is recognized to have "broad authority to define or redefine the class until judgment is entered or to otherwise alter or amend any class certification order before the decision on the merits," the court is free to amend and alter the definition of subclass (i) as it deems necessary. *White*, 1994 WL 105525, at *12. *See also* Fed.R.Civ.P. 23(c)(1) (order certifying a class "may be altered or amended before the decision on the merits"); *In re VMS Sec. Litig.*, 136 F.R.D. at 476 (permitting plaintiffs to amend class definition to provide for subclasses where plaintiffs had initially alleged both § 10(b) and § 11 claims as a single class).

The court agrees with the plaintiffs' position. As an initial matter, the court is not convinced that the original definition of this subclass would have precluded Dale from serving as its class representative. The initial definition clearly proposed a class of "all persons ... who: (i) purchased ... stock issued under and/or traceable to the Company's Registration Statement/Prospectus dated December 4, 1998 filed in connection with [the] IPO." (Pls. Mem. Supp. Class Cert. at 2). The court believes that, while Dale purchased on December 3, 1998, her purchase was clearly "under and or traceable to" the December 4, 1998 registration statement and prospectus filed in connection with the IPO. (*Id.*) Thus, the court is not convinced that plaintiffs would have had to request a modification of the definition of this subclass. Notwithstanding, for the reasons that follow, the court believes that plaintiffs' proposed changes can and should be incorporated into the definition of this subclass.

December 4, 1998 through June 7, 1999 (the "Class Period"), and who were damages by defendants' violations of the federal securities laws (the "Class").

Furthermore, contrary to defendants' assertion, the court concludes that no amending of the initial complaint is required since the Dale complaint properly alleges claims on behalf of all persons and entities who acquired Select Comfort common stock in the company's IPO. The court notes that the Dale complaint clearly refers to the only common stock public offering made by Select Comfort in December, 1998. The court also concurs with the plaintiffs' contention that a plain reading of paragraph 1 of the Dale complaint makes it absolutely clear that the Dale complaint seeks to represent all persons and entities who acquired Select Comfort common stock in the IPO pursuant or traceable to the registration statement and prospectus dated December 4, 1998.

The court thereby concludes that since the Dale complaint properly alleges claims on behalf of all persons and entities who acquired Select Comfort common stock in the IPO, which commenced when the SEC declared the registration statement prospectus effective on December 3, 1998, at 4:30 p.m. (EST), regardless of when they acquired the registered shares, the Dale complaint need not be amended as defendants contend. Rather, the motion for class certification will be modified to reflect that the class period conforms to the December 3, 1998 effective date supported by the record.

Finally, the court believes that plaintiffs' proposed changes to the definition of subclass (i) are appropriate and well-reasoned in light of the undisputed facts. The court has broad authority to define and redefine classes and subclasses until final judgment is entered pursuant to the Fed.R.Civ.P. 23(c)(1). *See White*, 1994 WL 105525, at *12; *In re VMS Sec. Litig.*, 136 F.R.D. at 476. Thus, the court will adopt and incorporate plaintiffs' proposed amendment to the definition of subclass (i) as follows:

All persons and entities, other than defendants and their heirs, successors and assigns and the members of the individual defendants' immediate families, who: (i)

(Pl. Dale Compl. ¶ 1.)

purchased Select Comfort stock issued under and/or traceable to the company's registration statement/prospectus dated December 4, 1998 **which was declared effective by the SEC on December 3, 1998 and** filed in connection with Select Comfort's IPO; ...

The court further concludes that, in light of the undisputed record, the proposed representative Dale falls within the parameters of subclass (i).[11] Accordingly, plaintiffs have satisfied the requirements of Rule 23(a)(3) as to this subclass.

### b. 10b–5 Class

■ Defendant also attacks class representative Louis Bohl ("Bohl") asserting that he cannot serve as a class representative because he is subject to unique defenses which are not typical of the other 10b–5 claims. (*See* Defs.' Mem. Opp. Class Cert. at 23.) In particular, defendants assert that Bohl purchased Select Comfort stock after the close of the class period, after the litigation had commenced and after he had completed his certification to serve as lead plaintiff.

11. Defendants also argue that Dale cannot represent a subclass of claimants who seek damages under § 12(a)(2) because she did not directly purchase her common stock from the "seller" in the IPO, but instead from Schawb one of the underwriters. In other words, defendants challenge Dale's privity for maintaining a § 12(a)(2) claim. The court however is unconvinced by this argument. The term "seller" has been defined in the context of § 12(a) to include any person "who successfully solicits the purchase [of securities], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 647, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988); *In Re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 314 (8th Cir.1997) (adopting *Pinter* definition of seller in the Eighth Circuit). Thus, the law does not require plaintiffs to show that the issuer directly sold shares to the class members in order to maintain a claim. In sum, since the facts support a conclusion that Select Comfort had a desire for financial gain, defendants fall squarely within the *Pinter* definition of seller.

12. Courts routinely certify a class with representatives who purchased stock during and after a class period. In fact, purchasing stock subsequent to a materially adverse disclosure, "averaging down," is a common technique used to decrease the average cost of an investment and which cannot be used to defeat a proposed class representative's typicality. *Antonson v. Robert-*

Plaintiffs counter that typicality is met where there are other members of the class who have the same or similar grievances as the class representative, and since Bohl has claims that arise from the same course of conduct, the typicality requirement is satisfied. *See Alpern,* 84 F.3d at 1540. *In re Tricord Sys.* 1996 U.S. Dist. 20943, at *24 (" '[s]o long as plaintiffs rely upon the same legal theory and their claims arise from the same course of conduct, the typicality requirement is satisfied.' ") (quoting *In re Regal Communications Corp. Sec. Litig.,* [1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) P. 98,871 at 93,234, 1995 WL 550454 (E.D.Pa. Sept. 25, 1995)). Plaintiffs also assert that even if there were defenses unique to lead plaintiff Bohl, they would not preclude a finding of typicality. Plaintiffs point to the *Trief* case that provides, "it is beyond reasonable dispute that a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members." *Trief v. Dun & Bradstreet Corp.,* .144 F.R.D. 193, 200–01 (S.D.N.Y.1992).[12]

*son,* 141 F.R.D. 501, 508 (D.Kan.1991); *Kronfeld v. Trans World Airlines, Inc.,* 104 F.R.D. 50, 53 n. 4 (S.D.N.Y.1984); *In re Adobe Sys., Inc. Sec. Litig.,* 139 F.R.D. 150, 155 (N.D.Cal.1991) (discussing the fact that plaintiff may have known about the misrepresentation subsequent to the class period, but prior to his purchase of more of defendant's securities, does not at all rebut the presumption of reliance). Bohl testified at length to his use of the "averaging down" technique in his Select Comfort transactions as well as with other stocks. (*See* Bohl Dep. 145–9, 152–3, 161–2.) Thus, defendants' assertion that Bohl is an atypical investor who cannot represent the proposed subclass fails. Plaintiffs also correctly assert that those who may have bought and sold during the class period, the "in-and-out" traders, and the "short sellers" may still properly be members of the subclass. *See Nathan Gordon Trust v. Northgate Exploration Ltd.,* 148 F.R.D. 105, 108 (S.D.N.Y.1993); *Danis v. USN Communications, Inc.,* 189 F.R.D. 391, 396 (N.D.Ill. 1999) (recognizing that plaintiff class is likely to include traders with divergent motivations and trading strategies). While these varying trading strategies may create later issues as to the assessment of individual damages, the court holds that the fact that some of the 10b–5 subclass members may have employed distinctive trading strategies does not render them atypical.

■ After a careful review, the court agrees with the plaintiffs' position. Bohl possesses the same interest and suffered the same injury as the other class members. *See In re Endotronics*, Fed. Sec. L. Rep. (CCH) ¶ 93,664, at 98,047, 1988 WL 9250 (D.Minn. Jan. 28, 1988); *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir.1992). The existence of potential defenses unique to a named plaintiff does not automatically preclude a finding of typicality. *See Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 58 (N.D.Ill.1996) (discussing that only when a unique defense is likely to consume the entire case should it be grounds to preclude certification); *Abt v. Mazda Am. Credit*, No. 98–C–2931, 1999 WL 350738, at *3 (N.D.Ill. May 19, 1999) ("[t]he existence of defenses unique to the named plaintiff does not automatically preclude a finding of typicality ... because Rule 23(a)(3) requires typicality of plaintiffs' claims, not defenses."). The record reflects that Bohl purchased Select Comfort stock during the class period, and like all other class members, allegedly overpaid because the stock price was artificially inflated due to defendants' purportedly misleading statements. The court believes that any defenses that may appear unique to Bohl are unlikely to detract from the focus of the litigation or become a detriment to the rest of the subclass members.

The court therefore cannot conclude that Bohl is subject to unique issues in this litigation sufficient to undermine the typicality requirement under Rule 23(a)(3). Thus, the court concludes that plaintiffs have satisfied the Rule 23(a)(3) prerequisite as to this subclass.

**4. Adequacy Requirement**

■ In order to satisfy the adequacy requirement, plaintiffs must show that the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and that each representative's interests are sufficiently similar to those of the class so that it is unlikely that their goals and viewpoints will diverge. *See Parkhill*, 188 F.R.D. at 339. Defendants challenge the adequacy of plaintiffs' class representatives contending that they have abdicated their responsibility for the direction of this litigation to their attorneys. Defendants further allege that, since the commencement of this action, plaintiffs have altered their claims and allegations in an effort to "shoehorn" their case to fit certification.

**a. 10b–5 Subclass**

■ Defendants assert that the proposed lead plaintiffs, Robert Graham, Joseph Pobuda and Lewis Bohl are inadequate representatives of the 10b–5 subclass. Defendants specifically allege, in part, that: (1) Graham did not review the complaint prior to signing his certification, lacks detailed knowledge of the litigation and has failed to appropriately monitor his attorney's actions in this lawsuit; (2) Pobuda failed to research his attorneys before retaining them, misstated the dates of the class period and lacks credibility arising from his deposition testimony; and (3) Bohl lacks a substantive understanding of the litigation, has not sufficiently reviewed the class action complaint, and was unaware of a settlement offer that had been extended by defendants. In sum, defendants allege that these three plaintiff representatives have turned over the prosecution of this action to their attorneys and are therefore inadequate to serve as class representatives.

Plaintiffs respond that under Rule 23(a), the court need only consider whether plaintiffs' counsel is qualified to vigorously prosecute the interest of the class and whether plaintiffs' proposed class representatives have interests sufficiently common with the other members of the class. *See Paxton*, 688 F.2d at 562–63; *Biben v. Card*, No. 84–0844–CV–W–6, 1986 WL 1199, at *6 (W.D.Mo. Jan.6, 1986) ("The requirement of Rule 23(a)(4) ... has generally been recognized as imposing two related standards: (1) an absence of conflicts of interest between the named plaintiffs and the rest of the class members, and (2) an assurance of vigorous prosecution of the lawsuit ... [a]s for the latter test, courts will usually 'focus on the competence and experience of class counsel.'" (citing *Newberg* § 3.22)).

Plaintiffs assert that the three named plaintiffs are adequate representatives because they have interests in common with the rest of the members of the class since all bought stock based upon the alleged misrep-

resentations of defendants. *See id.* Plaintiffs also assert that the three named representatives are able to vigorously prosecute this action through their employment of qualified legal counsel.[13] Plaintiffs accuse defendants of misquoting the proposed class representatives' deposition testimony and over-arguing the extent to which they are familiar with legal terminology or are able to recall specific details of the litigation.

The court agrees with plaintiffs. Class representatives in complex cases are not required to have the detailed level of firsthand knowledge of facts or law that defendants seek to impose. *See In re Workers' Comp.*, 130 F.R.D. 99, 107–108 (D.Minn.1990); *Harman v. LyphoMed, Inc.*, 122 F.R.D. 522, 528 (N.D.Ill.1988) ("[i]n a complex securities case involving novel economic and legal theories ... it is irrational to expect plaintiffs to exhibit a detailed knowledge of the issue [such as fraud on the market]."). The class representatives have demonstrated a willingness to vigorously prosecute this action through qualified counsel and appear sufficiently able to protect and advance the interests of the entire subclass.[14]

The court thus concludes that the proposed representatives will fairly and adequately represent the 10b–5 subclass.

### b. IPO Subclass

■ Defendants assert that representative Dale is inadequate since she is purportedly not a member of the IPO subclass and because her behavior demonstrates a lack of diligence and competency. Regarding the first objection, the court has addressed this issue above and considers Dale to be a member of the subclass she seeks to represent. Regarding the second objection, while the court agrees that Dale and her counsel should have determined the actual date of Dale's purchase of the stock at an earlier date, the court does not believe that this failing rises to a level of inadequacy which will preclude her from serving as a subclass representative.[15] Moreover, the court does not consider that any delay in identifying the purchase date is indicative of a lack of personal credibility or veracity on the part of Dale. Accordingly, the court concludes that Dale is adequate to represent the IPO claims subclass.

In sum, the court concludes that all of the named plaintiffs have demonstrated that they are adequate representatives who will fairly represent the interests of the other class members. Plaintiffs have met the adequacy requirements of Rule 23(a)(4). Having found that plaintiffs have satisfied the requirements of Rule 23(a), the court now addresses whether plaintiffs satisfy the requirements of Rule 23(b).

### B. Rule 23(b) Analysis

■ In addition to meeting the prerequisites of Rule 23(a), an action must also satisfy at least one of the three subdivisions of Rule 23(b).[16] For the following reasons, the court concludes that this action satisfies the requirement of Rule 23(b)(3), which states in pertinent part:

> (b) Class Actions Maintainable. An action may be maintained as a class action if the

---

**13.** Defendants do not apparently challenge class counsel's qualifications, experience or ability. Defendants also do not appear to argue that the proposed class representatives hold any interests antagonistic to the class. *See In re Bulk Popcorn Antitrust Litig.*, 783 F.Supp. 1194, 1197–98 (D.Minn.1991) (holding that where "[t]here are no conflicts of interest between the plaintiffs and the class members, and the plaintiffs are represented by qualified counsel[,] plaintiffs thereby satisfy the adequate representation requirement set forth in Rule 23(a)(4).")

**14.** The court is also not convinced by the defendants' attack on Pobuda's credibility. As plaintiffs pointed out in their brief, the record abundantly reflects that Pobuda was a careful and credible witness. (*See* Pls.' Reply Mem. at 16–

17.) Moreover, as plaintiffs correctly point out, any inquiry into the credibility of a witness' deposition testimony is better left for another stage of the proceedings. *See Adobe Sys.*, 139 F.R.D. at 155, n. 10.

**15.** Additionally, as the court has already discussed, since paragraph 1 of Dale's complaint clearly reflects that her claims arise from the IPO that was approved by the SEC on December 3, 1998, the court does not believe that plaintiffs' original definition of the subclass precludes Dale from serving as the representative of the IPO subclass.

**16.** The court notes that defendants did not specifically contest the 23(b) prerequisites in their papers or at oral argument.

prerequisite of subdivision (a) are satisfied and, in addition: ... (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. Predominance

 There are no bright line rules to determine whether common questions predominate. *See Lockwood Motors Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 579 (D.Minn.1995). Instead, a court must consider the facts of the case presented, and "a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position." *Id.* Thus, a class action is appropriate when common questions representing the significant aspect of a case can be resolved in a single action. *In re Workers' Comp.*, 130 F.R.D. at 108. The common question need not be dispositive of the entire action because "predominance" as used in the rule is not automatically equated with "determinative." *Id. See also Lockwood Motors*, 162 F.R.D. at 580 ("[c]ommon questions need only predominate; they need not be dispositive of the litigation."). As with the commonality and typicality requirements, the predominance inquiry is directed toward the issue of liability. "When determining whether common questions predominate, courts 'focus on the liability issue ... and if the liability issue is common to the class, common questions are held to predominate over individual questions'". *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 52 (S.D.N.Y.1987) (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981)). *See also Lockwood Motors*, 162 F.R.D. at 580 (" 'the fundamental question is whether the group aspiring to class status is seeking to remedy

a common legal grievance.' ") (quoting 3B *Moore's Federal Practice* ¶ 23.45 at 23–306 through 23–307 (2d ed.1995)).

Moreover, the mere fact that there are certain issues that may need to be determined on an individual basis does not necessarily preclude the satisfaction of the predominance requirement. *See Newberg* § 4.25 ("the very definition of the requirement of the predominance of common questions contemplates that individual issues will usually remain after the common issues are adjudicated"). For example, courts frequently grant class certification despite individual differences in class members' damages. *See Minnesota v. U.S. Steel Corp.*, 44 F.R.D. 559, 567 (D.Minn.1968); *White v. NFL*, 822 F.Supp. 1389, 1403–04 (D.Minn.1993). And in securities cases, courts often hold that under the "fraud on the market" theory, individual questions of reliance do not predominate over common questions. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 244–45, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Kaplan v. Rose*, 49 F.3d 1363, 1376 (9th Cir.1994) (" '[u]nder the fraud on the market theory, the plaintiff has the benefit of a presumption that he has indirectly relied on the alleged misstatement, by relying on the integrity of the stock price established by the market.' ") (quoting *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113–14 (9th Cir.1989)).

Plaintiffs assert that the critical issues in this lawsuit involve defendants' liability for carrying out their common course of conduct in violation of federal securities laws to the detriment of lead plaintiffs and the other members of the class. Put differently, plaintiffs believe that there are common legal and factual questions arising from defendants' central course of conduct that predominate over the individual questions.[17] *See In re Endotronics*, Fed. Sec. L. Rep. (CCH) at 98,048 ("courts have ... found that common questions predominate 'when the alleged fraudulent representations constitute a common course of conduct.' ") (citations omitted).

---

17. The predominate focus of this lawsuit, plaintiffs contend, will be on what defendants knew about the company's consumer credit agreement and when they knew it. (*See* Pls.' Mem. Supp. at 11.) In addition, plaintiffs assert that the defendants took steps to conceal information relating to the lender's desire and intent to terminate the customer lending agreement, thereby affirmatively misleading the market concerning the company's sales, market condition and growth prospects. (*Id.*)

The court agrees that common questions predominate here since the alleged fraudulent representations that generated sales of the common stock constitute a common course of conduct. Accordingly, the court concludes that the predominance requirement of Rule 23(b)(3) has been satisfied.

### 2. Superiority

Rule 23(b) also requires that the class action be a superior means to adjudicate plaintiffs' claims. Fed.R.Civ.P. 23(b). This requirement is satisfied only after the court has examined and weighed the following four factors: (1) the interest of members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3).

In this case, plaintiffs assert that all factors weigh in favor of certifying this case to proceed as a class action.[18] Plaintiffs particularly assert that there is no indication that members of the class prefer to prosecute their claims individually and that it is unlikely that any of the plaintiffs would have the economic ability to do so since the complexity of these claims requires intensive legal preparation making individual lawsuits prohibitively expensive. Plaintiffs thus assert that the class action "device" is not only the superior method for proceeding, but is effectively the only viable means of seeking redress for many of these claims. The court agrees.

In cases of this nature, the claims of individual investors are often too small to warrant separate lawsuits. *See In re Endotronics*, Fed. Sec. L. Rep. at 98,048; *Vernon J. Rockler & Co. v. Graphic Enter., Inc.*, 52 F.R.D. 335, 347 (D.Minn.1971) (" '[a] class action must be deemed the only practical method of litigating ... when the complex nature of the litigation and the comparatively small individual financial interests are considered.' ") (quoting *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 291 (S.D.N.Y.1969)). Clearly, individual class members may not have the inclination or financial wherewithal to maintain a lawsuit of this complexity.

Finally, this case appears to present no unusual difficulties in management or notification of class members, and plaintiffs' counsel is experienced and has handled other similar actions. While this case appears complex, the court concludes that it presents no novel or unique problems with respect to identifying class members or providing notice to them. The court is also unaware of any competing putative class actions in any other jurisdictions arising from this matter. Accordingly, the court believes that the superiority requirement of Rule 23(b)(3) is satisfied.

### CONCLUSION

For the reasons stated, the court concludes that plaintiffs have satisfied the requirements of Fed.R.Civ.P. 23. Accordingly, **IT IS HEREBY ORDERED**, that plaintiffs' motion for class certification is granted, and the court hereby:

1. Conditionally certifies the following plaintiffs' class of:

> All persons and entities, other than defendants and their heirs, successors and assigns and the members of the individual defendants' immediate families, who: (i) purchased Select Comfort stock issued under and/or traceable to the company's registration statement/prospectus dated December 4, 1998 which was declared effective by the SEC on December 3, 1998 and filed in connection with Select Comfort's IPO; or (ii) purchased Select Comfort common stock in the open market during the period December 4, 1998 through June 7, 1999, and who were damaged by defendants' violations of the federal securities laws;

2. Appoints lead plaintiff Heidi Dale as the Class Representative of Subclass (i) as defined above; and

3. Appoints lead plaintiffs Louis Bohl, Robert Graham and Joseph C. Pobuda as

---

18. The court also notes that defendants do not appear to seriously contest plaintiffs' assertion that the class action is superior to other methods for adjudicating this controversy. *See Nelsen v. Craig–Hallum, Inc.*, 659 F.Supp. 480, 489 (D.Minn.1987).

Class Representatives for Subclass (ii) as defined above.