RENDERED:  NOVEMBER 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0080-ME

ST. STEPHEN'S CEMETERY
ASSOCIATION; BARBARA
HOUSER; BRUCE D. ZIMMERMAN;
HERB ZIMMERMAN; MARK
HOLLAND; AND TONY BOSTIC                                    APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE ERIC J. HANER, JUDGE
                    ACTION NO. 17-CI-001663


TINA SEATON; CRYSTAL RAY;
KELLY BRYANT; PAMELA
WILKERSON; TINA CLARK; AND
CURRENTLY UNKNOWN,
UNDISCLOSED, UNLOCATED
PROSPECTIVE MEMBERS OF
THEIR CLASS                                                 APPELLEES


OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND MAZE, JUDGES.

CALDWELL, JUDGE: The Jefferson Circuit Court certified a class action, for liability purposes only, in a case involving alleged misconduct by the St. Stephen's Cemetery Association (the Cemetery) and some of its former board members or employees (collectively, Appellants). The only issue in this expedited appeal is whether the trial court erred by certifying the class. After examining the relevant law and having conducted oral arguments, we conclude the court did not abuse its discretion by certifying the overall class but improperly certified four fail-safe subclasses. Therefore, we affirm in part, vacate in part, and remand.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

Given the extremely narrow issues before us, the relevant facts and procedural history are straightforward. The operative second amended complaint was filed by six plaintiffs in 2018. This complaint generally alleges Appellants engaged in a pattern or practice of misconduct, such as not providing purchased grave plots, burying bodies in incorrect locations, and placing the remains of multiple persons in the same grave.

Later in 2018, plaintiffs filed a motion for class certification, for liability purposes only. The motion asked the trial court to certify a class consisting of "citizens of the United States of America who purchased and/or whose family members purchased burial plots and services at St. Stephen's Cemetery from Defendants from 1992 to present." Plaintiffs sought to have the

court also certify four subclasses, essentially containing: 1) persons whose loved ones' remains were lost or misplaced; 2) persons whose loved ones' graves were improperly maintained; 3) persons who did not receive headstones they purchased from defendants; and 4) persons whose grave plots are occupied by the remains of someone the purchaser did not authorize to be buried in that plot.

After a protracted delay,[1] the trial court granted the motion for class certification in 2022 and certified the following class and subclasses:

> All individual citizens of the United States of America who purchased and/or whose family members purchased burial plots and services at St. Stephen's Cemetery from Defendants between January 1, 1992 and February 24, 2017. . . .
>
> Subclass 1 – Lost and/or misplaced remains
>
> All individual citizens of the United States of America whose loved ones were buried or interred at St. Stephen's Cemetery between January 1, 1992 and February 24, 2017, and whose remains can no longer be located and/or whose loved ones' remains were exhumed without knowledge or consent and/or those whose loved ones have been buried in a single plot containing multiple people.
>
> Subclass 2 – Improper Maintenance of Graves
>
> All individual citizens of the United States of America whose loved ones were buried or interred at St. Stephen's Cemetery between January 1, 1992 and February 24,

---

[1] The unfortunate delay in ruling on the motion for certification was caused by factors such as the court conducting two oral arguments which were several months apart, the parties engaging in mediation, and the retirement of the original circuit court judge.

2017, and whose remains were improperly interred or improperly maintained, including, but not limited to, improper maintenance of loved ones' headstones and the grounds surrounding their loved ones' graves resulting in property damage in violation of Kentucky law.

Subclass 3 – Failure to provide headstones

All individual citizens of the United States of America who purchased, or whose loved ones purchased, headstones from Defendants between January 1, 1992 and February 24, 2017, and who did not receive the headstones they purchased.

Subclass 4 – Sale of previously sold or occupied cemetery plots

All individual citizens of the United States of America who have or whose loved ones purchased a grave plot from Defendants between January 1, 1992 and February 24, 2017 that is currently occupied by someone other than the purchaser, or the person the purchaser allowed to be buried in the plot, or has been sold to someone else.

Appellants' brief, Ex. A, p. 12-13. Appellants then filed this interlocutory, expedited appeal. *See* CR[2] 23.06; *Hensley v. Haynes Trucking, LLC*, 549 S.W.3d 430, 436 (Ky. 2018).

## ANALYSIS

### A. Standards of Review

The scope of our certification review is narrow. *Hensley*, 549 S.W.3d at 436. We may not "reach and conclusively determine a substantive issue that

---

[2] Kentucky Rule of Civil Procedure.

reaches the merits of a case when simply reviewing the propriety of the trial court's class-action certification determination." *Id.* at 442. Instead, "the only question" we may properly address "is whether the trial court properly certified the class . . . ." *Id.* at 436. Since the certification decision is fact-intensive, our review is governed by the abuse of discretion standard, meaning that we may disturb the certification decision only if it is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* at 444 (citation omitted).

### B. Requirements for Certification

To obtain class certification, a plaintiff must satisfy both CR 23.01 and 23.02. *Manning v. Liberty Tire Services of Ohio, LLC*, 577 S.W.3d 102, 110 (Ky. App. 2019). CR 23.01 provides class certification may be proper if:

> (a) the class is so numerous that joinder of all members is impracticable, (b) there are questions of law or fact common to the class, (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (d) the representative parties will fairly and adequately protect the interests of the class.

Those four prongs are usually shortened to numerosity, commonality, typicality, and adequacy of representation. *Hensley*, 549 S.W.3d at 442-43.

CR 23.02(c), the applicable subsection here, provides in relevant part that a class action is proper if the four requirements of CR 23.01 have been satisfied and "the court finds that the questions of law or fact common to the

members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Finally, since CR 23.01 and 23.02 are quite similar to their federal counterparts, Kentucky courts often examine federal precedent when determining certification issues. *See, e.g.*, *Nebraska All. Realty Company v. Brewer*, 529 S.W.3d 307, 311 (Ky. App. 2017). As it pertains to this appeal, our Supreme Court has adopted the holding of the United States Supreme Court that "certification is proper only if the trial court is satisfied, *after a rigorous analysis*, that the prerequisites of [the certification rules] have been satisfied." *Hensley*, 549 S.W.3d at 445 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51, 131 S. Ct. 2541, 2551, 180 L. Ed.2d 374 (2011)) (emphasis added by *Hensley*). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351, 131 S. Ct. at 2551. But courts have "no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the . . . prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Retirement Plans and Tr. Funds*, 568 U.S. 455, 466, 133 S. Ct. 1184, 1194-95, 185 L. Ed. 2d 308 (2013).

## C.  Fail-Safe Subclasses[3]

Before we may address other issues, we must resolve an antecedent

concern:  did the trial court certify a fail-safe class?  As we explained, defining a

class is an "essential prerequisite to maintaining a class action."  *Manning*, 577

S.W.3d at 110 (citations omitted).  And the class definition "must be sufficiently

---

[3] The parties did not specifically raise a fail-safe class argument in their briefs, but we explored the issue at oral argument.  Thus, it is proper to address it in this Opinion.  *See, e.g.*, *Elk Horn Coal Corp. v. Cheyenne Resources, Inc.*, 163 S.W.3d 408, 424 (Ky. 2005), *overruled on other grounds by Calloway Cnty. Sheriff's Department v. Woodall*, 607 S.W.3d 557 (Ky. 2020) ("Finally we would note that this separation of powers issue was not raised in the lower courts, but rather it was raised sua sponte by members of this Court during oral argument.  The parties addressed the issue and we have confined ourselves to the record.  Thus we are not precluded by any rule or constitutional provision from addressing this issue.").  Moreover, though "[t]his issue was not raised on appeal" and we did not "go looking for it[,]" we inevitably "bump into it squarely out of the gate" when reviewing the propriety of the class certification – *i.e.*, the issue of whether the trial court certified a fail-safe class "flows naturally under our appellate review of the issue raised."  *Barker v. Commonwealth*, 341 S.W.3d 112, 114 (Ky. 2011).  We will confine our review to the record and applicable law.  *Priestley v. Priestley*, 949 S.W.2d 594, 596 (Ky. 1997) (citations omitted) (holding that "[s]o long as an appellate court confines itself to the record, no rule of court or constitutional provision prevents it from deciding an issue not presented by the parties[.]").  And the fact that we are reviewing whether a class is fail-safe on our own initiative is not novel as we have done so at least twice before (although in unpublished decisions which we cite merely to show that our review here is not unusual).  *Hitachi Automotive Systems Americas, Inc. v. Held*, No. 2019-CA-001318-ME, 2020 WL 2510534, at *3 (Ky. App. May 15, 2020); *Sullivan University Systems, Inc. v. McCann*, No. 2020-CA-000118-ME, 2020 WL 5587316, at *2 (Ky. App. Sep. 18, 2020).

Finally, because the parties did not explicitly raise this argument, our review proceeds under the palpable error standard found in CR 61.02.  *Barker*, 341 S.W.3d at 114 (reviewing such an issue under the palpable error standard found in the Rules of Criminal Procedure); *Blackaby v. Barnes*, 614 S.W.3d 897, 899 n.3 (Ky. 2021) (noting that the palpable error standards contained in the criminal and civil rules are "identical").  An error is palpable if it is "so serious that it would seriously affect the fairness to a party if left uncorrected.  Fundamentally, a palpable error determination turns on whether the court believes there is a substantial possibility that the result would have been different without the error."  *Hibdon v. Hibdon*, 247 S.W.3d 915, 918 (Ky. App. 2007) (internal quotation marks and citations omitted).

definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Id.* (citations omitted). Fail-safe classes are improper because they "are not administratively feasible. They inevitably require mini-trials to determine which individuals belong to the class." *Bohannan v. Innovak International, Inc.*, 318 F.R.D. 525, 529 (M.D. Ala. 2016).

A fail-safe class is one which "cannot be defined until the case is resolved on its merits. It bases its membership not on objective criteria, but on the legal validity of each member's claim. To determine class membership, the merits of each individual claim must be examined." *Manning*, 577 S.W.3d at 110 (internal quotation marks and citations omitted). In short, "[b]y its very nature, a fail-safe class includes *only* those who are *entitled* to relief." *Id.* at 110-11 (internal quotation marks and citation omitted). Or, as a federal court in Pennsylvania succinctly noted, "[a] fail-safe class is one that defines its members by the plaintiff's liability – all individuals wronged by the defendant, in the classic formulation." *Zarichny v. Complete Payment Recovery Services, Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015). *See also* 1 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 3:6 (6th ed. 2022). One blatant example of a fail-safe class occurred when a federal court in California was asked to certify classes consisting of persons who purchased computer products which had been "falsely

advertised" by the defendant. *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008). The court held the classes were fail-safe because "[t]o determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that Dell had falsely advertised." *Id. See also AT&T Corp. v. Feltner*, No. 2020-CA-1500-ME, 2021 WL 2753980, at \*3-4 (Ky. App. Jul. 2, 2021) (holding that a class was fail-safe when it was defined as "[a]ll real property owners in the Commonwealth of Kentucky on whose real property Defendants committed trespass, nuisance and/or negligent property damage") (cited only as an illustration).

Here, we have a unique situation in that the main class definition itself is not fail-safe, but all four subclasses are.[4] Specifically, the overall class contains, with some exceptions not relevant here, "[a]ll individual citizens of the United States of America[5] who purchased and/or whose family members purchased

---

[4] A court has the ability to divide a class into subclasses, and each subclass is then "treated as a class . . . ." CR 23.03(7). Therefore, we must scrutinize each subclass rigorously.

[5] It is unclear why the class is limited only to citizens of the United States since the same alleged wrongdoing could have been inflicted upon non-citizens. Similarly, the class broadly uses the expansive term "loved ones," not next of kin. Long ago, in a decision which has not been overruled, Kentucky's then-highest court held that:

> A recovery may be had **by the next of kin or the surviving spouse** for an unwarranted interference with the grave of a deceased, or for the infliction of an injury to a corpse, if either be done (a) maliciously, (b) or by gross negligence, (c) or wantonly, i.e., with a reckless disregard of the rights of another, (d) or for an unlawful or secret disinterment or displacement thereof, or (e) an action of trespass quare clausum fregit may be maintained by the

-9-

burial plots and services at St. Stephen's Cemetery from Defendants between

January 1, 1992 and February 24, 2017 . . . ." That definition does not premise

class membership on Appellants' liability.

By contrast, membership in the four subclasses clearly is based upon

having been wronged by Appellants. Subclass one contains persons whose loved

ones' remains cannot be located, were exhumed without consent, or are buried

with others in a single plot – *i.e.*, having been wronged by Appellants, and not

simply persons whose loved ones should be buried in a known and marked plot, for

example.

The same conclusion holds true for subclass two, which consists of

persons whose loved ones' remains "were improperly interred or improperly

maintained, including . . . improper maintenance of loved ones' headstones and the

grounds surrounding their loved ones' graves resulting in property damage in

violation of Kentucky law." That subclass explicitly premises its membership

---

holder of the title, or the person in possession, of the lot on which a grave is located, or (f) for the removal of a body from one grave to another by those in authority and control of the cemetery or burial ground, without notice, or an opportunity, to him who in law is entitled to be present, if he desires, before its removal.

*Louisville Cemetery Ass'n v. Downs*, 241 Ky. 773, 45 S.W.2d 5, 6 (1931) (emphasis added) (citations omitted). The parties do not address whether the class definition should use the more precise term *next of kin* instead of *loved ones*, so we will not extend this already lengthy Opinion by addressing the matter. But we caution the trial court on remand to ensure that any class contains only persons who would potentially be entitled to recover from Appellants. If necessary, the trial court may modify the class definition. *Hensley*, 549 S.W.3d at 450.

upon persons toward whom Appellees acted "improperly" and in "violation of Kentucky law." It is blatantly fail-safe as is but could be a viable sub-class without those determiners.

As for subclass three, its membership consists of persons who did not receive headstones which they, or their loved ones, purchased. In other words, to join that subclass a person (or the person's loved one) must not have received bargained for goods and services from Appellants. The subclass is fail-safe.

Finally, subclass four is also fail-safe. Although the language defining the subclass is imprecise at times, it consists of persons whose loved ones' grave "is currently occupied by someone other than the purchaser, or the person the purchaser allowed to be buried in the plot, or [the plot] has been sold to someone else." Again, a person must have been wronged by Appellants to be a member of that subclass.

While this Court may understand the benefit of having sub-classes for organizational purposes of a complex litigation, the subclasses must not be fail-safe. These subclasses are fail-safe, a defect which is serious, obvious, and unfair as to rise to the level of being palpable error. *Hibdon*, 247 S.W.3d at 918. We decline to let such error go uncorrected. Because the main class is not fail-safe, and each of the sub-classes would otherwise fit within the main class, the prudent action at this interlocutory juncture is to direct the trial court to issue a new class

certification order which does not contain the fail-safe subclasses. *See* CR

23.03(3) ("An order that grants or denies class certification may be altered or

amended before final judgment.").[6]

### D. CR 23.01 Factors

### 1. Numerosity

CR 23.01(a) provides that a class action is permissible if "the class is

so numerous that joinder of all members is impracticable . . . ." That prong is

usually referred to simply as numerosity.

There is no requirement that a class have a particular baseline

membership number to satisfy the numerosity requirement. *Manning*, 577 S.W.3d

at 112. But a class representative must provide a "reasonable estimate of the

number of purported class members." 35A C.J.S. *Federal Civil Procedure* § 89

(2022). *See also Sowders v. Atkins*, 646 S.W.2d 344, 346 (Ky. 1983). When

addressing numerosity, courts may consider factors like "the size of the class, the

ease of identifying its members and determining their addresses, facility of making

service on them, and their geographic dispersion." *Hensley*, 549 S.W.3d at 443

(citation omitted). Of course, "impracticability," as used in CR 23.01, "does not

mean impossibility. The class representative need show only that it is extremely

---

[6] We express no opinion on whether the trial court should certify revised subclasses on remand.

-12-

difficult or inconvenient to join all members of the class." *Hensley*, 549 S.W.3d at 443 (citation omitted).

Here, Appellees admit that it "is not possible to quantify the precise number of Class Members" but the Cemetery's records contain "the names of over 1,550 individuals who either purchased graves or were interred at the Cemetery" during the covered time period. Appellees' brief, p. 19. And Appellees have presented an affidavit from an accountant opining that the Cemetery's records show sixty-seven "instances of a single grave having been attributed to more than one person" and "approximately two-hundred seventy (270) separate, conflicting entries for individuals . . . ." Appellees' brief, Ex. 6, p. 3.

Appellants assert the class lacks numerosity since there are only a handful of named plaintiffs.[7] But Appellants cite only to CR 23.01 in the numerosity section of their brief. In other words, Appellants cite to no authority whatsoever holding that there must be a host of named class representatives in order to satisfy the numerosity prong. Moreover, though there is no absolute minimum number of class members, many courts have found "a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." 1 William B. Rubenstein, *Newberg and Rubenstein on Class*

---

[7] The trial court granted summary judgment for Appellants on at least some claims of three of the six named plaintiffs. However, those orders are interlocutory at this juncture and, in any event, do not change our conclusions.

*Actions* § 3:12 (6th ed. 2022). *See also* 1 *McLaughlin on Class Actions* § 4:5 (18th ed. 2021). Here, the accountant's affidavit shows there are potentially many more than forty class members. In sum, we discern no abuse of discretion in the trial court's numerosity conclusion.

### 2. Commonality

CR 23.01(b) provides in relevant part that a class action is permissible if "there are questions of law or fact common to the class . . . ." That prong is usually referred to simply as commonality. Appellants argue there is not commonality because the putative class members' claims are "highly individualized" because there is not "one common answer" which "can be drawn from one single finding on any of the allegations . . . ." Appellants' brief, p. 18.

As the United States Supreme Court has held, commonality "is easy to misread, since any competently crafted class complaint literally raises common questions." *Dukes*, 564 U.S. at 349, 131 S. Ct. at 2551 (internal quotation marks, brackets, and citation omitted). Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . ." *Id.* at 349-50, 131 S. Ct. at 2551 (internal quotation marks and citation omitted). The claims "must depend upon a common contention . . . of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will

resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350, 131 S. Ct. at 2551.

Even one common question may be sufficient. *Id.* at 359, 131 S. Ct. at 2556. And since the focus is on "whether the defendant's conduct was common as to all of the class members[,]" commonality may exist "even if some individualized determinations may be necessary to completely resolve the claims of each putative class member . . . ." *Summit Medical Group, Inc. v. Coleman*, 599 S.W.3d 445, 449-50 (Ky. App. 2019) (internal quotation marks and citations omitted). In short, satisfying the commonality requirement "is not a herculean task." *Nebraska All. Realty Company*, 529 S.W.3d at 312.

Much of Appellants' argument is based upon the perceived differences between the four subclasses. However, we have already concluded that the subclasses must be vacated, so any differences within or between them are irrelevant.

Additionally, CR 23.01 "does not require that **all** questions of law or fact be common." *Wiley v. Adkins*, 48 S.W.3d 20, 23 (Ky. 2001) (emphasis added). The trial court recognized there would be some individualized inquiries, but nonetheless held that there were common questions of law or fact, such as whether Appellants "fail[ed] to deliver the burial products and services that their customers purchased." Appellants' brief, Ex. A, p. 9.

Appellants look too granularly at the issue instead of properly focusing on the overarching allegations. For example, Appellants argue that showing that one class member did not receive a purchased headstone would not prove that other class members did not receive a purchased headstone. Perhaps so. But the allegations are that Appellants had a practice of failing to provide, for example, purchased headstones. Of course, like any class action, there are some differences between each particular potential class member's claim(s), but the presence of some individualized aspects does not defeat commonality. *See, e.g.*, 32B AM. JUR. 2D *Federal Courts* § 1511 (2022) (footnotes and citations omitted) (noting that "as long as all putative class members were subjected to the same harmful conduct by the defendant, the commonality requirement for class certification will endure many legal and factual differences among the putative class members.").

Here, as the trial court aptly noted, the core of defendants' alleged misconduct was common to all class members. In other words, showing that one class member did not receive a purchased headstone may not prove that another class member did not receive a purchased headstone. But Appellants claim misconduct common to all class members, which is the lens through which commonality is viewed. And the trial court certified a class as to liability only, so

-16-

the potentially individual damages is irrelevant, despite Appellants' seeming arguments to the contrary.[8]

Finally, although each case is factually distinguishable, at least two other courts have certified classes in analogous situations. *See, e.g.*, *In re Tri-State Crematory Litigation*, 215 F.R.D. 660, 690 (N.D. Ga. 2003) (citation omitted) ("Plaintiffs have listed numerous questions of law or fact common to the entire class, including: (1) whether the Tri-State Defendants mishandled, or failed to carry out the proper cremation of, remains delivered to them for cremation; (2) if the Tri-State Defendants mishandled, or failed to carry out the proper cremation of, remains delivered to them for cremation, over what time period did these acts take place; (3) whether Funeral Home Defendants are directly liable for their own action and inaction; (4) whether Funeral Home Defendants are vicariously liable for the actions of the Tri-State Defendants; and (5) whether Funeral Home Defendants have breached any contracts with Plaintiffs. The Court finds that Plaintiffs have satisfied the minimal showing required to establish commonality of the legal and factual questions raised in this action."); *Wofford v. M.J. Edwards & Sons Funeral Home Inc.*, 528 S.W.3d 524, 529-30, 543 (Tenn. Ct. App. 2017)

---

[8] Appellants strenuously challenged the propriety of certifying a class for liability purposes only in the trial court. However, Appellants "concede that 'liability-only' class certification is appropriate" if the requirements of CR 23.01 and 23.02 are satisfied. Appellants' reply brief, p. 3. Thus, under these facts, we will merely assume that it was permissible to certify such a liability-only class, provided the requirements of CR 23.01 and 23.02 were otherwise met.

-17-

(affirming a trial court's rejection of an argument by a funeral home that claims would require individualized proof in a case involving allegations that the defendant had improperly disposed of remains, including – as here – allegedly having buried multiple persons' remains in the same grave, because "[t]he central issue in this case moving forward is whether a funeral home has a duty beyond dropping off human remains at the cemetery.  This issue is common to all parties in this case.  The trial court found it better to proceed toward adjudicating that question as a class action.  Given that the alternative potentially is hundreds of separate trials with contradictory results, we agree.").  In sum, given the relatively low bar for satisfying the commonality prong, we discern no abuse of discretion in the trial court's conclusions.

### 3.  Typicality

CR 23.01(c) provides in relevant part that a class action may be proper if "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . ."  That prong is generally referred to simply as "typicality."  As the similarities between the parties' arguments regarding the two prongs demonstrate, there often is significant overlap between the commonality and typicality prongs.  *See, e.g.*, *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, 102 S. Ct. 2364, 2370, 72 L. Ed. 2d 740, n.13 (1982).

We have explained the intended difference between commonality and typicality as follows: "Unlike commonality, which focuses on the group characteristics such as the relationship of common facts and legal issues related to the class as a whole, typicality examines the individual characteristics of the named plaintiffs in relation to the class." *Manning*, 577 S.W.3d at 114. Our Supreme Court has instructed that "claims and defenses are considered typical if they arise from the same event, practice, or course of conduct that gives rise to the claims of other class members and if the claims of the representative are based on the same legal theory." *Hensley*, 549 S.W.3d at 443 (citation omitted).

Thus, the crux of the *typicality* prong is whether the claims "are all based on the same legal theory . . . ." *Id.* at 448. Some courts have held that "a liberal construction may be applied to find typicality as long as no express conflict between the representative party and the class exists . . . ." *Caruso v. Celsius Insulation Resources, Inc.*, 101 F.R.D. 530, 534 (M.D. Pa. 1984).

Here, Appellants' disagreement to the contrary notwithstanding, Appellees' claims are based on the same core legal theories. As the trial court held, Appellees assert "each of them has suffered one or more of the different types of injuries suffered by the members of their proposed class" and "as a whole, they [Appellees] have suffered all of the same types of injuries suffered by members of their proposed class." Appellants' brief, Ex. A, p. 10.

-19-

Thus, we do not agree with Appellants' repeated insistence that the Appellees' claims are atypical because they present "truly a one-by-one, plot-by-plot question . . . ." Appellants' brief, p. 15. Again, for example, the fact that there may be multiple persons in one grave does not inherently mean that other graves contain multiple people. But that is not the requirement. Instead, the commonality requirement asks simply whether Appellees' claims are aligned with those of the putative class members regarding core allegations and legal theories. They are.[9] Moreover, Appellants have shown no express conflicts between the named plaintiffs and the remainder of the putative class members.

In short, though we recognize that there are potentially some individual aspects to each named and putative class member's claims, we discern no abuse of discretion in the trial court's typicality determination.

---

[9] For example, the accountant averred that, in his review, "the errors and discrepancies identified in the official Cemetery records pertaining to the class Plaintiffs are common and typical of other errors and discrepancies identified in the records and on-sight inspection." Appellees' brief, Ex. 6, p. 3. The expert similarly averred that the "official cemetery records exhibited a pattern of incomplete, illegible and contradictory information" such that "[t]he discrepancies and conflicting data contained in these official records are persistent across the period official records were examined." *Id.* at p. 3-4. Appellants argue the accountant's affidavit is of no consequence because improper recordkeeping is not actionable. And, standing alone, perhaps such bookkeeping is not. But the affidavit highlights the allegations that the Cemetery's records are so consistently incorrect or inscrutable (*i.e.*, common and typical) that it cannot be known with requisite certainty who is buried in any individual plot, or how many remains may be buried in a single plot. Whether those claims ultimately prove successful is beyond the scope of this interlocutory appeal.

### 4. Adequacy of Representation

Finally, CR 23.01(d) provides in relevant part that a class action may be proper if "the representative parties will fairly and adequately protect the interests of the class." Our review of this prong focuses on the adequacy of both the named class representatives and counsel. *Manning*, 577 S.W.3d at 115.

As the United States Supreme Court explained, "[t]he adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26, 117 S. Ct. 2231, 2250-51, 138 L. Ed. 2d 689 (1997) (internal quotation marks, brackets, and citations omitted). *See also Hensley*, 549 S.W.3d at 443.

As we construe it, Appellants do not vigorously dispute the trial court's adequate representation conclusion. We thus will not belabor the point as we discern no obvious abuse of discretion in the trial court's conclusions.

### E. CR 23.02 Requirements

Having addressed CR 23.01, we turn to CR 23.02, which provides in relevant part:

> An action may be maintained as a class action if the prerequisites of Rule 23.01 are satisfied, and in addition:
>
> . . . .

(c) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (i) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (iv) the difficulties likely to be encountered in the management of a class action.

"There are no bright line rules to determine whether common questions predominate." *In re Select Comfort Corp. Securities Litigation*, 202 F.R.D. 598, 610 (D. Minn. 2001). Instead, the issue must be analyzed in light of the particular facts and circumstances of each case, *id.*, which means "[t]here is little uniform guidance on how to assess when common issues predominate over individual ones." *Daye v. Community Financial Service Centers, LLC*, 313 F.R.D. 147, 166 (D.N.M. 2016). *See also* 7AA Mary Kay Kane, *Fed. Prac. & Proc. Civ.* § 1778 (3d ed. 2022). Since the ultimate merits of the case are not before us, our narrow focus is on whether Appellees have adequately shown "that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc.*, 568 U.S. at 459, 133 S. Ct. at 1191.

The United States Supreme Court has held that the core of the predominance inquiry is whether the common issues "are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016) (citation omitted). If there are dominant common issues, then the predominance requirement is satisfied "even though other important matters will have to be tried separately . . . ." *Id.* (citation omitted). In other words, "a case need not present only common questions to merit certification, and the presence of some individual questions does not destroy predominance . . . ." *Daye*, 313 F.R.D. at 166.

Though they appear similar,[10] the predominance test is not intended to be a mere regurgitation of the commonality or typicality requirements. Instead, the predominance test is "stricter" because it addresses "not just that common issues exist," but whether those common issues "are more prevalent than non-common issues." 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:51 (6th ed. 2022). *See also Amchem Products, Inc.*, 521 U.S. at 624, 117 S. Ct. at 2250.

---

[10] *See, e.g.*, *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 522 F.3d 6, 19 (1st Cir. 2008); *Kleen Products LLC v. International Paper*, 306 F.R.D. 585, 592 (N.D. Ill. 2015).

The trial court found that there are predominant common questions of law and fact, the resolution of which "would substantially advance the determination of the claims of the members of [Appellees'] proposed class . . . ." Appellants' brief, Ex. A, p. 11. The court held that any individualized issues, especially regarding damages, would be "relatively simple to resolve in a separate trial after the trial on the common questions of law and fact." *Id.* Finally, the court concluded that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy" because it would be "an inefficient use of judicial time and resources" to make "each individual plaintiff . . . present the same proof concerning [Appellants'] alleged practices in separate trials" and some persons would "refrain from pursuing litigation for purely economic reasons" if required to present their claims in an individual case. *Id.* at 11-12.

In their briefs, Appellants do not vigorously contest many of those conclusions, such as the efficiency of pursuing class action relief or the likelihood that some persons with potentially meritorious claims would not individually pursue them due to the inevitable individual litigation costs vis-à-vis the potentially recoverable damages. Those findings are, essentially, a conclusion that a class action is superior to other methods for resolving the claims at hand. We perceive no abuse of discretion regarding those superiority, efficiency-based findings. *See, e.g.*, *Wright v. Country Club of St. Albans*, 269 S.W.3d 461, 467-68 (Mo. Ct. App.

2008) (citation omitted) ("Based on the facts before us, class action would be superior to other methods of adjudication in that, in the absence of class action, the potential expense of the litigation in relation to the relatively small recovery amount for each plaintiff would prevent most, if not all, injured parties from initiating a lawsuit. Judicial economy and efficiency dictate that all such possible claims against Defendants be tried in one class action lawsuit, rather than numerous lawsuits."); *Bobbitt v. Milberg LLP*, 338 F.R.D. 607, 625 (internal quotation marks and citations omitted) (D. Ariz. 2021) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action. For example, class litigation is superior when a group composed of consumers or small investors typically will be unable to pursue their claims on an individual basis because the cost of doing so exceeds any recovery they might secure. In addition, class litigation is superior when it will reduce costs and conserve judicial resources.").

However, Appellants do vigorously contest the trial court's conclusion that common issues predominate over individual ones. But Appellants' arguments are largely a reiteration of their previously discussed arguments regarding typicality and commonality.

We begin by noting that Appellants again refer to the individualized damages which each class member may have suffered. Again, any differences

regarding damages among the class members is irrelevant since this is a liability-only class. Moreover, though any broad legal principle may be subject to exceptions, "the black letter rule is that individual damage calculations generally do not defeat a finding that common issues predominate . . . ." 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:54 (6th ed. 2022).

The main issues here are Appellees' allegations that Appellants consistently failed in their duties, such as to provide bargained-for tombstones and to reserve burial plots solely for the purchasers thereof, or their designees. The Appellees have argued that Appellants had a pattern or practice of such alleged misconduct, as highlighted by the accountant's notation of incomplete, indecipherable, or erroneous records. In other words, the core underlying facts for each class member would be strikingly similar, and those main issues dominate over any individualized ones. *See, e.g.*, *In re Tri-State Crematory Litigation*, 215 F.R.D. at 696 ("The facts of this case are essentially identical for every Plaintiff: Plaintiffs allege that each and every Plaintiff relied on a Funeral Home Defendant to handle the cremation of Plaintiff's loved one. Each and every Plaintiff claims that a Funeral Home Defendant failed to perform that service in a manner that conformed to the standard of care for the funeral home industry, and the Plaintiff suffered emotional injury because the Funeral Home Defendant failed to perform to the standard of care. The Court concludes that variations in conduct from one

Plaintiff to another do not predominate over the overwhelming common issues related to Defendants' conduct."). Appellants have not shown that special, individualized claims would predominate over those common, main issues.[11] Consequently, when considering all the facts and circumstances of this case, we discern no abuse of discretion in the trial court's conclusion that Appellants satisfied the requirements of CR 23.02.

### F. Summation

The certification process in this case has been hard fought. All parties have presented reasonable arguments in favor of their positions. Other jurists may have reached different conclusions than did the trial court. But the question is not what we, or another court, would conclude. The question is whether the trial court's decision was so ill-founded as to be an abuse of discretion. It is not.

As our Supreme Court explained, albeit in a factually different context, "it is possible for a trial court to rule contrary to what an appellate court would rule without abusing its discretion" and an appellate court "is powerless to disturb such rulings." *Miller v. Eldridge*, 146 S.W.3d 909, 917 (Ky. 2004). Under that deferential standard, we must affirm the decision to certify a class even though we recognize that the evidence may also have permitted different conclusions. The

---

[11] Appellants essentially repeat their argument that Appellees' claims cannot be resolved without analyzing each and every grave. We disagree, for the same core reasons previously discussed.

trial court engaged in the requisite "rigorous analysis" and its conclusions are not unsupported by sound legal principles. However, the decision to certify the fail-safe subclasses is not supported by sound legal principles. Consequently, the certification of the subclasses must be vacated, and the matter remanded with instructions to issue a new certification order which does not contain fail-safe subclasses.[12]

## CONCLUSION

For the foregoing reasons, the Jefferson Circuit Court is affirmed as to the decision to certify a liability-only class. The Jefferson Circuit Court's certification of the fail-safe subclasses is vacated. This case is remanded for entry of a new order defining the class membership which does not contain fail-safe provisions, after which the case shall proceed to resolution on the merits.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

David A. Shearer, Jr.
Christopher T. Brann
Ft. Mitchell, Kentucky

BRIEF FOR APPELLEES:

Jasper Ward
Alex C. Davis
Mark K. Gray
Matthew L. White
Stephen A. Brooks
Louisville, Kentucky

---

[12] We have considered all of the arguments in the parties' briefs, but decline to address arguments which are irrelevant, redundant, underdeveloped, or otherwise unnecessary for us to consider in order to resolve the limited issues properly before us.